IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TINA DURON,

        Plaintiff,

v.                                          Civil Action No. 3:05-CV-112

UNITED STATES DEPARTMENT
OF AGRICULTURE,

        Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.  Procedural History

On October 19, 2005, the plaintiff, Tina Duron, filed a complaint against defendants, Maryanne H. Cage ("Cage") and Dr. William Hershberger ("Hershberger"), individually and against the United States Department of Agriculture in the above-styled civil action seeking damages for alleged reprisal/retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.[1] Plaintiff filed a Motion for Extension of Time to correct service of process on March 2, 2006. This Motion was granted on September 18, 2006. Defendant's Motion for Extension of Time to Answer was granted on January 17, 2007. On

---

[1] Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).

January 30, 2007, defendant United States Department of Agriculture ("USDA") filed its answer in this action. On the same date, Defendant, USDA, moved to dismiss defendants Cage and Hershberger, on the ground that supervisors and/or co-employees are not liable in their individual capacities for Title VII violations. Defendants Cage and Hershberger were dismissed on May 14, 2007. The parties consented to trial by a magistrate judge in the Report of Counsel on Initial Planning Meeting and the case was assigned to the Undersigned Magistrate Judge on June 25, 2007. On August 21, 2008, Defendant filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment. Defendant filed a Supplemental Memorandum in Support of its Motion to Dismiss on September 16, 2008 when plaintiff failed to file a responsive pleading. On September 24, 2008 the Court allowed plaintiff, who had not filed a response to these motions, until October 28, 2008 to respond. Plaintiff responded to Defendant's Motion to Dismiss on October 28, 2008. Defendant replied on November 14, 2008.

Defendant's motion to dismiss as well as its motion for summary judgment and Plaintiff's responsive pleading thereto are now fully briefed and ripe for review. After considering the parties' memoranda and the applicable law, this Court finds that USDA's motion to dismiss as well as its motion for summary judgment should be granted because the allegations in the Complaint, construed in the light most favorable to the plaintiff, fail to constitute a claim under Federal Rule of Civil Procedure 8(a). Plaintiff did not make an initial complaint of discrimination and therefore was not engaged in protected activity as required by 42 U.S.C. § 2000e-3. Also, portions of the Complaint are time-barred pursuant to 29 C.F.R. § 1614.105(a)(1).

II. Facts

This action arises out of plaintiff's employment with the USDA. In her Complaint, the plaintiff alleges that she was subject to retaliation and harassment as well as a hostile work environment for filing a grievance and a formal complaint with the Equal Employment Opportunity Commission ("EEOC"). Specifically, the plaintiff alleges that the defendant, USDA, engaged in retaliation and reprisal against her for prior EEO activity within the meaning of Title VII of the Civil Rights Act of 1964.

The plaintiff was employed by the United States Department of Agriculture as an Administrative Assistant to the Director of the National Center for Cool and Cold Water Aquaculture ("NCCCWA") in Kearneysville, WV for a period of four years, from on or about February, 2000 thru July, 2004.[2] Plaintiff reported directly to Hershberger.[3] Cage was the Administrative Officer responsible for covering both the NCCCWA location as well as the Appalachian Fruit Research Station ("AFRS"). Cage's office was located at the AFRS, approximately five miles from the NCCCWA.

Plaintiff's first attempt to file an administrative grievance regarding her employment with the USDA was done by letter dated November 14, 2001. This was the plaintiff's first complaint or attempt at a grievance. The letter was sent to Cage via Hershberger. The letter regarded Cage's conduct toward the Plaintiff. In the letter, plaintiff complained that she had been

---

[2] This Court is not sure of the accuracy of the date of the Plaintiff's resignation. Plaintiff's Complaint before the Court indicates her letter of resignation was tendered on July 16, 2005, but the Plaintiff's Answers to Defendant's First Set of Interrogatories, Response to Interrogatory No. 9(b), states her end date with the USDA was July 2004.

[3] Dr. William K. Hershberger is the Director of the NCCWA, who like the Plaintiff, occupied an office at the NCCCWA.

harassed by Cage. The letter specifically addressed a meeting that the plaintiff had with Cage on November 9, 2001. The purpose of this meeting was to review time and attendance records. As the administrative officer, it was Cage who had the ultimate responsibility for the recording of time and attendance. Plaintiff alleges that subsequent to this meeting, she became the direct target of harassment and retaliatory actions. Plaintiff alleges that these actions created a hostile work environment under which she was forced to work.

Plaintiff further alleges that in November 2003, she was scheduled for leave for a Worker's Compensation related injury to her hands (carpal tunnel) and Cage made inappropriate comments regarding the length of leave granted to plaintiff. Plaintiff alleges that Cage contacted her on at least three occasions making inquiries about her medical condition against plaintiff's wishes. Plaintiff claims she was met with hostility and was avoided by other workers upon her return to work.

Plaintiff contacted Diane Cook Koch, of the USDA North Atlantic Area Office, on or about March 17, 2003 regarding the hostile work environment and harassing conduct of which she was the subject. Plaintiff alleges that on March 21, 2004, she was scolded by Hershberger for calling the area office and for not following the proper chain of command.

On April 16, 2004, Plaintiff sent a letter to John Crew, North Atlantic Area, Deputy Area Director, seeking relief from the harassment and retaliatory actions directed toward her by Cage and Hershberger. This memorandum constituted the plaintiff's second written complaint. This letter referenced the plaintiff's conversation with Ms. Koch and chronicled a list of the plaintiff's grievances against Cage and Hershberger. Specifically, the letter alleges: 1) the treatment the plaintiff received by Cage with regard to the time and attendance records; 2) mileage not being

provided for private vehicle use; 3) Cage's questioning the length of time the plaintiff took off following carpal tunnel surgery; 4) the plaintiff's admonishment by Cage for failing to laugh at a joke; and 5) Cage's inquiring into recent health problems she was experiencing. In the letter, plaintiff contends that the allegations "have been ongoing from the onset of [her] employment with USDA."

Mr. Crew responded to the plaintiff by letter dated June 3, 2004. Mr. Crew's letter made it clear to the plaintiff that her letter, in and of itself, was not an Administrative Grievance, nor had she requested any relief. Mr. Crew assured the plaintiff that he found "no basis of harassment or inappropriate behavior on the part of Ms. Cage." Mr. Crew invited the plaintiff to participate in the Agency's Cooperative Resolution Program, and informal mediation as a means of settling her dispute(s) with Cage. Mr. Crew implied in his letter that the plaintiff had previously declined similar offers.

On May 4, 2004, an EEO Counselor, Bessie Neverson, wrote to the plaintiff, acknowledging she had been contacted by the plaintiff on April 27, 2004. Ms. Neverson's letter explained the process of filing a formal discrimination complaint with the USDA.

On or about May 12, 2004, plaintiff alleges that it had come to her attention that Cage had called each of the Administrative Office employees into her office and informed them that plaintiff had filed an informal complaint against her. Plaintiff alleges that the attitude of her co-workers changed significantly following the awareness of her informal complaint, subjecting her to even more intimidation and harassment by their behavior. Plaintiff alleges she became the target of hostility and verbal and nonverbal harassment and intimidation.

After the filing of an informal complaint on April 27, 2004, the plaintiff filed a formal

5

complaint of discrimination with the EEOC, which was accepted on May 18, 2004. Nowhere in her Response to the Agency's First Set of Discovery and Interrogatories, nor in her EEOC Complaint does the plaintiff cite any specific instances of discrimination. Rather than discrimination, she cited reprisal as the basis of her complaint.

Plaintiff's Complaint alleges that her June 5, 2005[4] yearly evaluation from Hershberger was not as she expected. Plaintiff alleges she inquired of Hershberger whether the negative evaluation had anything to do with the fact that she filed a grievance against Cage. Plaintiff claims Hershberger's response what that he "tried to separate the two, but apparently [I] didn't do a good job." Plaintiff states she submitted a letter of resignation on July 16, 2005.[5]

### III. Applicable Law

#### A. Motion to Dismiss

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true. Advanced Health Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a

---

[4] This Court is unable to determine the certainty of this date. It appears to the Court that June 5, 2004 is the more likely date of the evaluation.

[5] The Court believes the actual date was July 16, 2004.

procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. § 1356, at 298.[6] For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357, at 304, 310.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances. Rogers, 883 F.2d at 325. A dismissal under Rule 12(b)(6) is granted only in cases in which the allegations raised in the complaint clearly demonstrate that the plaintiff does not have a claim and that no set of facts would support the plaintiff's claim. 5A Wright & Miller, supra § 1357, at 344-45.

B.    Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex

---

[6] Rule 12 was amended, effective December 1, 2007, as part of the general restyling of the Civil Rules. The operative version of Rule 12 provided in subsection (b) that "[i]f, on a motion [under Rule 12(b)(6),] matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

7

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id., at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences

must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

IV. Discussion

The Defendant moved to dismiss the Complaint for failure to state a claim upon which relief can be granted on the ground that the Plaintiff's discrimination complaint based upon reprisal, does not reference in any way a protected activity as is necessary to support such a claim.[7] In the alternative, the Defendant has moved for summary judgment on the ground that the complaints set forth by the Plaintiff throughout the EEO process never identify an unlawful employment practice as the basis for a reprisal allegation.

A. Statute of Limitations on Title VII Claim

Title VII requires a plaintiff to exhaust administrative remedies before an action may be filed in a federal district court. Love v. Pullman Co., 404 U.S. 522, 523 (1972). Generally, a plaintiff is required to file a claim with the EEOC before pursuing the matter in a federal court. Cornell v. Gen. Electric Plastics, 853, F. Supp. 221, 224 (S.D. W. Va. 1994) (citing Foster v. Gregory, 655 F.2d 191, 191-92 (4th Cir. 1988) (holding "It is well settled...that a party seeking relief under Title VII must file timely charges of employment discrimination with the EEOC before that party may seek judicial relief")). In order to preserve federal rights in West Virginia,

---

[7] It appears to the Court that there are certain dates in the Plaintiff's Complaint that are inaccurate. The Court has come to this conclusion upon reviewing the exhibits submitted as part of Defendant's Memorandum in Support of Its Motion to Dismiss or in the Alternative Motion for Summary Judgment. This Court notes that for purposes of the Defendant's Motion to Dismiss, the dates, as alleged in the Complaint, will be accepted as true. However, for purposes of the Motion for Summary Judgment, this Court finds that the Defendant's exhibits more accurately state the relevant dates in this case.

a "deferral" state, a plaintiff must file a complaint with the EEOC within 300 days of the alleged unlawful employment practice. See Mohasco Corp. v. Silver, 447 U.S. 807, 810 (1980). A federal employee, however, has only 45 days after the date of the matter alleged to be discriminatory to contact an EEO Counselor. 29 C.F.R. § 1614.105(a)(1)

In this civil action, the plaintiff contacted an EEO Counselor on April 27, 2004. Therefore, any claims that occurred on or before March 13, 2004 are time-barred. The plaintiff claims she was subjected to harassment and a hostile work environment subsequent to her November 14, 2001 letter to Cage. The plaintiff further claims the tension escalated within the work environment and she was once again subjected to retaliatory actions subsequent to her March 17, 2003 letter to Ms. Cook Koch. In November, 2003, the plaintiff was contacted by Cage on at least three occasions making inquiries about her medical condition. Thus, this Court finds that the plaintiff did not timely file an EEOC complaint with respect to these particular claims. Accordingly, USDA's motion to dismiss with respect to these claims should be granted.

  B. <u>Title VII Retaliation Claim</u>

Plaintiff cites no particular statute in her Complaint; however, she characterizes her action as one of retaliation and reprisal against her for prior EEO activity within the meaning of Title VII of the Civil Rights Act of 1964 as amended. This Court agrees with Defendant's presumption that plaintiff's Complaint is based on 42 U.S.C. § 2000e-3 which states, in part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment,...to discriminate against any individual,...because he has opposed any practice made an unlawful employment practice by this sub-chapter, or because he has made a charge, testified, assisted, or participated in any manner an investigation, proceeding, or hearing under this sub-chapter.

The employer's retaliatory actions alleged by the plaintiff must have been taken in response to the plaintiff's opposition to an unlawful employment practice or participation in an investigation of an unlawful employment practice made unlawful pursuant to the provisions of 28 U.S.C. § 2000e-2:

> It shall be an unlawful employment practice for an employer- 1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;...

Title VII's anti-retaliation provision forbids an employer from "discriminating against"[8] an employee (or job applicant) because he or she has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." § 2000e-3(a).

The three-stage proof scheme established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to retaliation claims. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 442 (4th Cir. 1998); see also Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998). Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case of discriminatory retaliation. See Tinsley, 155 F.3d at 442. The Fourth Circuit Court of Appeals has determined that in order to establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that: 1) the employee engaged in a protected activity; 2) the employer took an adverse employment action against her; and 3) a causal link existed between the protected activity and the adverse employment action. Id. at 443; see also Lettieri v.

---

[8] "Discriminate against" refers to distinctions or differences in treatment that injure a protected individual. See Jackson v. Birmingham Bd. Of Educ., 544 U.S. 167, 174 (2005).

Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007). If the employer can then proffer a nonretaliatory reason for its action, the burden then shifts back to the employee to show that the employer's proffered reason is pretextual. See Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004).[9]

    1.    Protected Activity

"Title VII does not create a claim for every employee who complains about the potential for Title VII violations." Instead, Title VII protects "an employee who opposes 'any practice made an unlawful employment practice,' 42 U.S.C. § 2000e-3(a), or who 'reasonably believes' he is opposing a practice made an unlawful employment practice by Title VII." Jordan v. Alternative Resources Corp., 467 F.3d 378 (4th Cir. 2006). See also Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 54 (2006). Therefore, in order to meet the "protected activity" prong of the above-mentioned test, plaintiff must show she either actually was or reasonably believed she was opposing an unlawful employment practice or participating in an investigation of an unlawful employment practice made unlawful pursuant to the provisions of 28 U.S.C. § 2000e-2.

"To qualify as opposition activity an employee need not engage in the formal process of

---

[9] The defendant does not dispute that a federal employee may pursue a retaliation claim under Title VII. This Court therefore assumes that plaintiff's retaliation claim is cognizable under Title VII. See Baqir v. Principi, 434 F.3d 733, 747 n.16 (4th Cir. 2006) (assuming that federal employee's retaliation claim was cognizable, but recognizing that relevant Title VII provision, 42 U.S.C. § 2000e-16, does not explicitly provide for such cause of action); see also Gomez-Perez v. Potter, 128 S. Ct. 1931, 1941 n.4 (2008) (acknowledging, but declining to decide, open question of "whether Title VII bans retaliation in federal employment"); Ziskie v. Mineta, 2008 WL 4891202, 9 (4th Cir. 2008) (acknowledging the disagreement about "whether the Supreme Court's decision regarding the scope of the adverse action requirement in Burlington Northern applies to federal employees"). Because Title VII does not explicitly provide federal employees with a cause of action, this Court will therefore assess the theories underlying Plaintiff's retaliation claims under the Title VII provision prohibiting private-sector retaliation, 42 U.S.C. § 2000e-3(a).

adjudicating a discrimination claim. Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998).

While the opposition clause applies only to those who protest practices that they reasonably and in good faith believe are unlawful, the participation clause applies to all individuals who participate in the statutory complaint process. Thus, courts have consistently held that a respondent is liable for retaliating against an individual for filing an EEOC charge regardless of the validity or reasonableness of the charge. To permit an employer to retaliate against a charging party based on its unilateral determination that the charge was unreasonable or otherwise unjustified would chill the rights of all individuals protected by the anti-discrimination statutes. See Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579 (6th Cir. 2000); see also, Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1312 (6th Cir. 1989). However, the participation clause does not afford protection to an employee who simply files a complaint with the EEOC. It is established that the underlying matter must involve a charge of discrimination that states a Title VII claim. "[T]he filing of a sworn charge of discrimination with the EEOC is a mandatory prerequisite to the validity of the charge." Balazs v. Liebenthal, 32 F.3d 151, 156 (4th Cir. 1994). "[T]o sustain a suit for retaliation it is not necessary that the plaintiff prove that the underlying claim of *discrimination* was true." See Id. at 159 (emphasis added).

It is indisputable that the plaintiff filed a formal complaint with the EEOC. On the surface it would seem that the filing of the complaint would satisfy the "protected activity"

prong under the umbrella of "participatory activity." However, this Court cannot overlook the fact that the complaint with the EEOC was for reprisal and not for discrimination. The plaintiff has at no time alleged she was discriminated against in violation of Title VII. It is clear that the original charge need not be valid or reasonable for a plaintiff to pursue a retaliation claim at the summary judgment level. However, the charge must be that of discrimination or harassment in violation of Title VII. "The retaliation provisions of [Title VII] do not protect employees from retaliation for filing *any* charge alleging *any* misconduct; to gain protection, the charge- -factually supported or not- -must allege conduct within the scope of the statute." Philip J. Pfeiffer, *Employment Discrimination Law*, 499 (2002). It is clear that a plaintiff simply cannot proceed on a charge of retaliation based upon reprisal in an attempt to skirt around Title VII's clear and unambiguous requirements.

In the Complaint before this Court, the plaintiff does not allege a single instance of discrimination. In addition, she fails to allege discrimination in any of her "grievances" or in her EEOC complaint. A closer look at the EEOC complaint reveals the plaintiff's chief complaint was that of reprisal, and that it had been "ongoing from the onset of [her] employment with USDA." Because the plaintiff in the instant case has failed to allege a single act of discrimination prohibited by Title VII, she cannot, in an attempt to hide behind the protections afforded by the statute, proceed with her claim. The Third Circuit Court of Appeals relied on Balasz when it was faced with a similar issue. In Slagle v. County of Clarion, 435 F.3d 262 (3rd Cir. 2006), cert denied, 547 U.S. 1207 (2006), the Court concluded: "All that is required is that a Plaintiff allege in the charge that his or her employer violated Title VII by discrimination against him or her on the basis of race, color, religion, sex, or national origin, in any manner." Id. at

268. The plaintiff here failed to allege discrimination and therefore cannot assert a retaliation claim for filing the charge.

Plaintiff asserts she was the victim of harassment by her supervisor and was subjected to a hostile work environment. It is well established that in order to make a prima facie case of retaliation under Title VII, a plaintiff must allege that he or she was subjected to the harassment and/or a hostile work environment because of his/her membership in a protected class. To put it another way, the plaintiff must have been harassed *because of* her race, color, religion, sex, or national origin. While this Court sympathizes with workers who are subjected to harassment and are forced to work in hostile environments, it is not within the statutory scheme enacted by Congress for courts to call into question employers' actions under Title VII where a plaintiff does not allege discrimination as a basis for her retaliation complaint. Plaintiff's complaint does not mention a single instance where she was opposing an unlawful employment practice or participating in an investigation, proceeding, or hearing under Title VII. It is apparent that Plaintiff had a personality conflict with her supervisor and at least some of her co-workers. However, it is unclear that this has anything to do with her membership in a class afforded protection by Title VII.

Plaintiff's Complaint alleges various instances of conflict with her supervisor(s) that do not rise to the level necessary to make a viable Title VII claim. Plaintiff's initial grievance was for an instance of harassment by her supervisor, Cage. This Court does not construe "harassment" in this instance to have been because of Plaintiff's membership in a class granted protection by Title VII. Plaintiff goes on to assert that subsequent to the grievance, she became the direct target of harassment and retaliatory actions. Again, while sympathetic, this Court

points out that Title VII is an anti-discrimination statute and the retaliatory actions by the employer must have been in response to a complaint of discrimination in order to bring the plaintiff under the umbrella of protections afforded by Title VII. Simply filing a grievance is not enough. Plaintiff's next complaint is that Cage contacted her on at least three occasions to make inquiries about her medical conditions. Plaintiff alleges that these went against her wishes not to discuss her medical issues. The Undersigned sees no basis for how this employer action could give rise to a Title VII claim. Employers have a duty to follow up on their employees who are being treated for Worker's Compensation injuries. While this Court understands Plaintiff's desire to not discuss her medical issues with her employer, it is simply good practice, and not in any way grounds for a Title VII claim, for employers to maintain an up-to-date status of any and all employees who are out of work because of a Worker's Compensation injury.

     This Court therefore finds, upon reviewing the record, that the plaintiff fails to make a claim for retaliation because the plaintiff is not opposing a practice that is unlawful under Title VII. Furthermore, this Court cannot see how the USDA could be said to have been retaliating against the plaintiff when the plaintiff herself says her issues with management had been going on from the onset of her employment with USDA. This fact supports USDA's argument that the on-going dispute between plaintiff and her supervisor(s) was the result of personality conflicts rather than discrimination or reprisal. Even assuming the USDA engaged in retaliatory activity on account of the plaintiff's filing of a complaint, Ms. Duron is precluded from passing the summary judgment stage because she failed to allege discrimination in her complaint.

     Although the plaintiff's complaint fails to show prima facie elements of retaliation as she did not engage in protected activity, this Court deems it necessary to undergo a thorough analysis

16

to include the second and third elements of the Fourth Circuit test, namely, that an adverse employment action was taken against her and that there was a causal connection between the employer's adverse action and the protected activity.

　　2.　　Adverse Employment Action

If the employee has engaged in a protected activity, the burden remains with her to show that an adverse employment action was taken against her. She must then show a link between the adverse action and the protected activity. The issue of what constitutes an adverse employment action recently came before the United States Supreme Court in Burlington Northern, 548 U.S. 53 (2006). The test laid out by the Court states that the "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." The Burlington Court refrains from crafting a specific legal standard, instead outlining the standard in general terms because "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." Id. at 68-69.

According to Von Gunten v. Maryland, 243 F.3d 858, 866 (4th Cir. 2001), an adverse employment action includes not only termination, but also harassment, if the retaliatory "act or harassment results in an adverse effect on the terms, conditions, or benefits of employment." Aside from her claims of general harassment and hostile work environment, which this Court finds to be incidental at best and in no way the basis for a claim under Title VII, the plaintiff has alleged the following actions by the USDA in her complaint: 1) Retaliatory actions subsequent to her filing of a grievance; 2) phone calls to discuss her medical condition while she was on leave for a Worker's Compensation related surgery; 3) scolding for not following the proper chain of

17

command; and 4) a negative yearly evaluation. This Court finds it plausible that the negative evaluation meets the Burlington test in light of the fact that the plaintiff contends she had no prior negative evaluations and her claim that Hershberger might not have done a good job separating her grievance and the evaluation. Had plaintiff's EEOC complaint alleged discrimination, she may have she may have passed the summary judgment stage because her negative evaluation constituted an adverse employment action and Hershberger's statement that he "may not have done a good job separating her grievance and the evaluation" shows a causal connection. However, the plaintiff failed to allege that she was discriminated against on the basis of her membership in any protected class and the record does not support an inference of discriminatory behavior on the part of the defendant. For these reasons, the plaintiff has failed to make a prima facie case of retaliation under Title VII, and the defendant's motion for dismissal as well as the defendant's motion for summary judgment must therefore be granted.

IV.   Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure is **GRANTED**. The allegations in the Complaint, even as construed in the light most favorable to the plaintiff, failed constitute a statement of a claim under Federal Rule of Civil Procedure 8(a) because the plaintiff did not make an initial complaint of discrimination and therefore was not engaged in protected activity as required by 42 U.S.C. § 2000e-3. Also, portions of the Complaint are hereby dismissed as time-barred for the reasons as set forth more thoroughly above. Defendant's Motion for Summary Judgment is **GRANTED** for the same reasons as set forth above.

IT IS SO ORDERED

The Clerk of the Court is DIRECTED to transmit a copy of this Memorandum, Opinion and Order to counsel of record herein. The Clerk is DIRECTED to enter judgment in this matter in favor of Defendant and against Plaintiff.

**DATED**: November 20, 2008

*/s/ James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE